IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LANCE POUGH, | ) | CASE NO. 4:04 CV 1427 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| STATE OF OHIO, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## I.  Introduction

Before the Magistrate Judge by referral from the District Court[1] is a petition by Lance Pough, *pro se*, for a writ of habeas corpus.[2]  In 2000, Pough pled guilty to one count of complicity to commit murder with a firearms specification and is currently serving a sentence for that offense of fifteen years to life, along with three years for the firearms specification.[3] He is currently incarcerated in federal prison under a plea agreement for a related federal conviction for conspiring to possess crack cocaine with intent to distribute.[4]

For the reasons that follow, the Magistrate Judge recommends dismissing part of Pough's petition as procedurally defaulted and denying the remaining claim as without merit.

---

[1] ECF # 13.

[2] ECF # 1.  *See also*, ECF # 6 (supplement to "motion"); ECF # 11 (amended "motion"); ECF # 16 (amended "motion").

[3] *State v. Pough*, No. 2000-T-0151, 2002 WL 31813100, at *1 (Ohio App. 11 Dist., Dec. 13, 2002).  A copy of the Westlaw version of this opinion is attached for the convenience of the District Judge.

[4] *United States v. Pough*, 20 F. App'x 345 (6th Cir. 2001).

## II.  Facts

The facts behind Pough's state conviction are relatively straightforward.  Pough was named on May 5, 2000 in a secret indictment in Trumbull County charging him with one count of aggravated murder with death penalty specifications, a firearms specification, and one count of conspiracy to commit murder.[5]  The charges arose from the 1998 murder of Braderick McMillan[6] who was operating as a federal informant[7] in a crack cocaine transaction in which Pough was the seller.[8]

Already facing federal drug charges at the time of indictment on these state charges, Pough sought a comprehensive plea agreement with both federal and state prosecutors.[9] After negotiations, Pough, in his state case, agreed to plead guilty to the conspiracy count and to cooperate with the state in its investigation of the murder.  In return, the state dropped the capital murder charge and, among other things, agreed that, while any state sentence was being served concurrently with his federal sentence, Pough would be incarcerated in a federal prison.[10]

---

[5] *Pough*, 2002 WL 31813100, at *1.

[6] *Id.*

[7] *See*, ECF # 39, Ex. 9, attach. 1 (January 31, 2000 letter of federal prosecutor to Pough's federal public defender).

[8] *Pough*, 20 F. App'x at 346.

[9] ECF # 39, Ex. 9, attach. 1.

[10] *Id.*, Ex. 2 (May 15, 2000 signed plea agreement).

Under this agreement, Pough pled guilty to a single count of conspiracy to commit murder, with a firearms specification.[11] The state, in turn, moved the trial court to drop the capital murder count.[12]  Following a hearing, the trial court accepted Pough's plea, nolling the first count of the indictment.  The court sentenced Pough to a term of fifteen years to life, along with three years for the firearms specification.[13]

## III.  State Procedural History

**A.    Direct appeal**

Pough timely appealed, *pro se*, to the state appeals court.[14] Counsel was appointed for Pough on appeal.[15] Through counsel, Pough raised two assignments of error:

1.    The Appellant's guilty plea was not made on a knowing and voluntary basis due to the ineffective assistance of trial counsel, in violation of the Appellant's Federal and Ohio Constitutional rights.

2.    The trial court erred, as a matter of law, by accepting the Appellant's guilty plea to the amended indictment.[16]

---

[11] *Pough*, 2002 WL 31813100, at *1.

[12] *Id.*

[13] *Id.*

[14] ECF # 39, Ex. 7.

[15] *Id.*, Exs. 12, 13.

[16] *Id.*, Ex. 20.

The appeals court affirmed the decision of the trial court to accept Pough's plea rejecting both of the assignments of error.[17]

Pough, now acting through new appointed counsel, appealed to the Ohio Supreme Court raising two propositions of law:[18]

1.    A criminal defendant receives constitutionally defective assistance of counsel in a criminal proceeding where the defendant enters a plea of "guilty" and the record reveals that: (1) the defendant cooperated with the state in assembling the evidence to indict the defendant; (2) the defendant's cooperation was induced by promises made by the federal prosecuting attorney which were never kept; (3) the defendant indicated to the trial court that he felt the plea agreement was unfair and based on unkept promises, but also felt that he had no options due to the evidence that he had provided the state; and (4) the defendant's plea of "guilty" was made very shortly after he was indicted and the defendant was never advised by trial counsel that the evidence against him may have been unconstitutionally obtained and subject to suppression.

2.    A trial court commits reversible error by accepting a criminal defendant's guilty plea where the record reveals that the defendant made statements to the trial court at the plea hearing and at the sentencing hearing which should have indicated to the trial court that the defendant was not making the plea on a knowing and voluntary basis.[19]

The Ohio Supreme Court denied the appeal as not involving a substantial constitutional question.[20]

---

[17] *Id.*, Ex. 38.  *See also*, *Pough*, 2002 WL 31813100.

[18] *Id.*, Ex. 39.

[19] *Id.*

[20] *Id.*, Ex. 41.

**B.    Motions to reopen the direct appeal**

Pough, *pro se*, then attempted in various motions to re-open his appeal, to amend his motion, and to obtain counsel.[21]  The court of appeals denied these motions as either not constituting an application under Ohio Rule of Appellate Procedure 26(B) or as duplicative.[22]

Thereafter, Pough, *pro se*, filed a Rule 26(B) application, asserting that, although it was admittedly untimely, it should be granted because he was without counsel to represent him and was without access to Ohio materials in his prison library.[23]  The Ohio appeals court denied this application, holding that he failed to show cause for his untimely application because he had no right to counsel in Rule 26(B) proceedings; a prisoner's limited access to library materials is not sufficient to establish cause; and, even if cause could be established, Rule 26(B) provides a remedy for errors of appellate counsel only – Pough's entire argument went to purported errors of his trial counsel.[24]  Moreover, the court noted that Pough had failed to comply with the specific requirement of Rule 26(B)(2)(d) by failing to provide a sworn statement attesting to his basis for re-opening the appeal.[25]

---

[21] *See*, *id.*, Exs. 42, 43, 44, 46, 48.

[22] *Id.*, Exs. 45, 49.

[23] *Id.*, Ex. 50.

[24] *Id.*, Ex. 51.

[25] *Id.*

Pough sought a reconsideration of this decision.[26] The appeals court denied this motion.[27]

## C.  Petition for post-conviction relief

After failing to re-open his appeal, Pough, *pro se*, filed for post-conviction relief and for appointment of counsel and moved for production of grand jury minutes and docket sheets.[28] The trial court dismissed the petition as untimely and denied the ancillary motions.[29]

Pough thereupon filed, *pro se,* motions to amend his petition,[30] to supplement the earlier motion,[31] and to tender additional facts.[32]  The court dismissed the amended petition as untimely and denied the other motions.[33]

Pough then sought to appeal these dismissals for untimeliness.[34]  In a filing the court of appeals construed as a brief on the merits, Pough raised two assignments of error:

> 1.     The court committed error when it failed to find "cause" existed under the circumstance of this case; and failed to grant the defendant jurisdiction to have his claims heard.

---

[26] *Id.*, Ex. 54.

[27] *Id.*, Ex. 55.

[28] *Id.*, Ex. 56.

[29] *Id.*, Ex. 58.

[30] *Id.,* Ex. 59.

[31] *Id.*, Ex. 60.

[32] *Id.*, Ex. 61.

[33] *Id.*, Ex. 62.

[34] *Id.*, Ex. 63.

2.     The common pleas court erred by failing to hold a hearing on the "cause" issue to determine if the defendant's circumstances demonstrated cause for his failure to file a timely post-conviction petition.[35]

The appeals court found each of Pough's assignments of error to be without merit, affirming the decision of the trial court.[36]

Pough attempted to appeal to the Ohio Supreme Court.  However, the clerk of that court returned Pough's materials to him unfiled, citing the absence of a notarized affidavit of indigency.[37]

## IV.   Federal habeas petition

After these forays in the state system, Pough filed his federal habeas petition.[38]  As previously noted, this petition consists of several amendments and supplements, with many individual claims remaining unframed and unorganized, embedded within the narrative of several documents.

In response, the state has undertaken to collect and organize the various claims for relief in an effort to present a cogent response.  Upon careful consideration of the record, the Magistrate Judge here adopts the formulation of the claims advanced by the state, both in respect of their essential accuracy and to ensure some commonality in the review of the

---

[35] *Id.*, Ex. 64.

[36] *Id.*, Ex. 66.

[37] ECF # 17, Ex. AA (September 9, 2004 letter to Lance Pough from The Supreme Court of Ohio).

[38] ECF # 1.

claims.[39]  After the state put forward these statements of Pough's claims, Pough himself has not objected to this re-statement and has used the state's re-statements and numbering of claims to organize his own further discussion and argument.

Accordingly, as formulated by the state, Pough raises the following ten grounds for relief:

1. Denial of effective assistance of trial counsel where Pough's state-appointed defense counsel advised Pough to cooperate and confess during pre-indictment interrogation.

2. Denial of effective assistance of trial counsel where Pough's state-appointed defense counsel failed to: (1) investigate the conduct of Pough's counsel in his federal case; (2) recognize the errors of Pough's federal defense attorneys; and (3) advise Pough of the errors of his federal defense attorneys prior to his plea in state court.

3. Conviction was obtained by plea of guilty which was not made voluntarily as a result of the conduct and ineffectiveness of Pough's federal defense attorneys.

4. Denial of effective assistance of trial counsel where Pough's state-appointed defense counsel labored under an actual conflict of interest at the pre-trial, plea and sentencing proceedings.

5. Misconduct of the state prosecutor in contacting state-appointed defense counsel to represent Pough during arraignment and plea stages violated Pough's right to conflict-free counsel and the Due Process Clause of the Fourteenth Amendment.

---

[39] The state's formulation of Pough's claims, together with the supporting facts and citations to the various parts of the record, is at ECF # 36 at 8-12.

6.    The trial court erred by participating in appointing Pough's state-appointed defense counsel off the record with instruction from the prosecutor, ex parte, which denied Pough his right to: conflict-free counsel; a fair trial under the Sixth Amendment; a fundamental[ly] fair procedure under the Fourteenth Amendment, due process under the Fourteenth Amendment and an impartial judge.

7.    Denial of effective assistance of counsel where Pough entered a guilty plea and the record reveals that: (1) Pough cooperated with the state in assembling the evidence used by the state to indict Pough; (2) Pough's cooperation was induced by promises made by a federal prosecuting attorney which were never kept; (3) Pough indicated to the trial court that he felt the plea arrangement was unfair and based on broken promises, but he felt he had no options due to the evidence he had provided to the state; and (4) Pough's plea of guilty was made very shortly after he was indicted and Pough was never advised by trial counsel that the evidence may have been unconstitutionally obtained and subject to suppression.

8.    Denial of access to the courts.  The failure of the State of Ohio and the Prison warden to provide Pough with a copy of Ohio's post-conviction statute and Ohio case law has denied Pough his right of access to the courts under the First and Fourteenth Amendments, and renders Pough's conviction unconstitutional.

9.    Denial of access to the courts. The State of Ohio and the Warden of the federal prison denied Pough his right of access to the courts under the First and Fourteenth Amendment to due process of law by denying him access to Ohio case law.  This denial renders the conviction unconstitutional.

10.   Denial of access to the courts. The State of Ohio and the Warden of the federal prison denied Pough his right of access to the courts under the First Amendment and his right to due process under the Fourteenth Amendment by denying him access to Ohio case law which establishes a notarization rule in Ohio courts.  This denial renders the conviction unconstitutional.[40]

---

[40] *Id.*  Internal citations to the record omitted.

# V.  Analysis

## A.    Overview

### 1.    The state's position

The state asserts that Pough procedurally defaulted grounds one, two, three, four, five, six, eight, nine and ten.[41]  It contends that Pough raised grounds one, two, three, four, five and six for the first time in his two petitions for post-conviction relief that the Ohio appellate court dismissed as untimely.[42]  The state maintains that such dismissals for untimeliness are an adequate and independent state law basis to preclude federal habeas review of these claims.[43]  As hereinafter discussed, Pough attempted to appeal the dismissal to the Supreme Court of Ohio, but that Court rejected the appeal for procedural noncompliance.

In addition, the state argues that Pough defaulted on habeas grounds eight and nine, first raised in the appeal from dismissal of his post-conviction petition, because he failed to perfect an appeal from the appellate court decision rejecting those grounds to the Ohio Supreme Court.[44]  The Clerk of the Supreme Court refused to file his appeal because Pough failed to file a notarized affidavit of indigency.  Inasmuch as Supreme Court rules do not

---

[41] ECF # 36 at 12.

[42] *Id*. at 15.

[43] *Id.*

[44] ECF # 36 at 17.

allow for delayed appeals in post-conviction proceedings, the state reasons that Pough cannot at this late date seek to perfect such an appeal in the Ohio Supreme Court.[45]

Further, the state asserts that habeas ground ten, asserted for the first time in the federal petition, is procedurally defaulted because Pough has no further state remedies available in which to assert that claim.[46]

Finally, the state contends that ground seven – the claim that Pough's guilty plea was not "knowing and voluntary" as a result of ineffective assistance of trial counsel – should be dismissed as without merit. The state argues that this claim was fully considered and rejected by the Ohio appeals court, and that decision was not an unreasonable application of clearly established federal law.[47]

## 2.    *Pough's response*

Pough argues that his procedural defaults should all be excused.  He argues that in every case he was without knowledge of the timeliness requirements because he had no access to copies of the Ohio procedural rules, being incarcerated at a federal prison in Pennsylvania.[48] In a similar vein, he contends that the federal prison warden and the State of Ohio deprived him of access to Ohio case books containing the procedural rules, thus

---

[45] *Id.* at 17-18.

[46] *Id.*

[47] *Id.* at 23-29.

[48] ECF # 17 at 1-2. This document is not paginated.  The page numbers given here have been calculated by the Magistrate Judge for the convenience of the District Judge.

constituting "denial of access to the courts."[49] Further, he asserts that the failure to notarize his indigency affidavit in the Ohio Supreme Court was due to the "unexpected" two week absence of the prison notary just prior to the deadline for submitting his motion for leave to appeal.[50] Finally, in a later filing, he argues that Ohio should not be allowed to apply, as the basis for procedural default, its rule requiring affidavits to be notarized because, according to Pough, that rule was only imposed by case law after his conviction was final and approximately six weeks before his motion for leave to appeal was due.[51]

Pough also maintains that the state appellate court's ruling on his claim in ground seven was based "on an unreasonable determination of the facts in light of the evidence presented in state court."[52] He argues that trial counsel's performance was constitutionally deficient because he did not seek discovery as to the state's case prior to counseling Pough to accept the plea.[53] Moreover, he contends that after he cooperated under a federal plea agreement, which allegedly was not honored, his attorney in the state case did not seek to suppress any evidence gained from that cooperation, thereby exposing Pough to two unpalatable options:[54] Specifically, Pough maintains that counsel's deficiencies forced him

---

[49] *Id.*

[50] *Id.* at 4.

[51] *See*, ECF # 32.

[52] ECF # 40 at 4. Pough's handwritten pleadings are not paginated. The page number here was calculated by the Magistrate Judge.

[53] *Id.* at 5-14.

[54] *Id.*

-12-

to either live with the consequences of a plea he did not bargain for or go to trial against evidence obtained from his cooperation.[55]

For the reasons that follow, the Magistrate Judge recommends denying this petition.

**B.  Procedural default**

*1.  The applicable law*

The Sixth Circuit recently explained the analytical framework for considering procedural default as follows:

> A petitioner for a writ of habeas corpus must meet certain procedural requirements to permit review of his habeas claims by a federal court.  The petitioner must first exhaust the remedies available in state courts by fairly presenting his federal claims to the state courts; unexhausted claims will not be reviewed by the federal court.  The exhaustion "requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  The federal court will not review claims that were not entertained by the state court either due to the petitioner's failure to raise those claims in the state court while state remedies were available *or* when the petitioner's failure to comply with a state procedural rule prevented the state court from reaching the merits of the claims.

> For noncompliance with a state procedure to serve as a bar to habeas review, the state procedure must satisfy the standards set forth in *Maupin v. Smith*.  First, there must be a state procedure in place that the petitioner failed to follow.  Second, the state court must have actually denied consideration of the petitioner's claim on the ground of the state procedural default.  Third, the state procedural rule must be an "adequate and independent state ground to preclude habeas review.  This inquiry "generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims."  A state procedural rule must be "firmly established and regularly followed" to constitute an adequate basis for foreclosing habeas review.  A state procedural rule is an independent ground when it does not rely on federal law.  If these three factors are satisfied, the

---

[55] *Id.*

petitioner can overcome the procedural default by "demonstrat[ing] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice."[56]

To establish "cause" for a procedural default, a habeas petitioner must show that "something *external* to the petitioner, something that cannot be fairly attributable to him[,]..." precluded him from complying with state procedural rule.[57] Establishing "prejudice" requires that any alleged constitutional error be shown to have worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[58] A "fundamental miscarriage of justice" is understood to mean "actual innocence."[59]

Ineffective assistance of counsel may provide cause to excuse procedural default, but only if that claim is itself first fairly presented to and exhausted in state courts.[60] However, a failure to exhaust state remedies on an ineffective assistance of counsel excuse for a procedural default may also itself be excused from procedural default if a federal habeas petitioner can establish cause and prejudice concerning that claim.[61]  But a claim of

---

[56] *Smith v. State of Ohio Dep't of Rehab. and Corrs.*, __ F.3d __, No. 04-4280, 2006 WL 2571395, at **2-3 (6th Cir. Sept. 8, 2006) (emphasis in original, internal citations omitted). A copy of this opinion is attached for the convenience of the District Judge.

[57] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (emphasis in original).

[58] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[59] *Lancaster v. Adams*, 324 F.3d 423, 436 (6th Cir. 2003).

[60] *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000).

[61] *Id.*

-14-

ineffective assistance of counsel will not serve to excuse procedural default occurring during state post-conviction proceedings because there is no right to counsel in such proceedings.[62]

**2.      *Pough procedurally defaulted claims one, two, three,  four, five, six, eight, nine and ten.***

a.      *Grounds one, two, three, four, five and six are procedurally defaulted since they were dismissed as untimely*.

Pough sought to present what are now federal habeas grounds one, two, three, four, five and six for the first time in a first amended motion for post-conviction relief,[63] a second amended motion,[64] and a supplement to the second amended motion.[65]  The trial court never considered the merits of the arguments raised by Pough, but twice denied the motion for post-conviction relief – as amended and supplemented – as untimely.[66]  In both instances the court explicitly relied on the Ohio statute[67] that requires that a post-conviction petition be filed no later than 180 days after the transcripts in the direct appeal are filed, unless certain recognized exceptions to that time requirement are met.[68]  The court noted that Pough's motion came more than nine months after the appellate transcripts were filed and that, since

_____

[62] *Coleman*, 501 U.S. at 752.

[63] ECF # 39, Ex. 56 at 3.  "I would like you [the Ohio court] to construe [the May 14, 2003 request for counsel and motion for a stay] as a post-conviction application and treat this [submission of June 13, 2003] as amendments...."

[64] *Id.*, Ex. 59.

[65] *Id.*, Ex 61.

[66] *Id*., Ex. 58 (Order of Aug. 27); *id*., Ex. 62 (Order of Aug. 29).

[67] Ohio Rev. Code § 2953.21(A)(2).

[68] Ohio Rev. Code § 2953.23.

-15-

none of the exceptions to the time requirement were present, the court was "without jurisdiction to entertain the petition and dismisses same without hearing."[69] The court of appeals affirmed the dismissal.[70]

The presence of statutory time limits on filing post-conviction petitions in Ohio satisfies the first *Maupin* test requiring the existence of a state procedural rule. In addition, the reliance here by the state courts on that time limit to deny consideration of any of Pough's claims for post-conviction relief meets the second *Maupin* factor.

Moreover, the statutory time limit for post-conviction petitions in Ohio is a regularly enforced rule in Ohio[71] and, therefore, is an adequate and independent state law ground for foreclosing federal habeas consideration of federal claims.[72] Accordingly, compliance with the third *Maupin* criteria is established.

Pough attempts to find cause for his failure to comply with Ohio's rule on timely filing of post-conviction petitions by claiming that he was without knowledge of the time requirement since (1) the library at his federal prison in Pennsylvania does not have Ohio

---

[69] ECF # 39, Ex. 58. *See also*, *id.*, Ex. 62.

[70] *Id.*, Ex. 66.

[71] *E.g.*, *State v. Bluford*, No. 86695, 2006 WL 1174494 (Ohio Ct. App. 8th Dist. May 4, 2006); *State v. Coleman*, Nos. 03AP-219, 03 AP-220, 2003 WL 23096039 (Ohio Ct. App. 10th Dist. 2003); *State v. Boyle*, No. 00-CA-34, 2000 WL 1528638 (Ohio Ct. App. 5th Dist. 2000).

[72] *Merriweather v. Brunsman*, 1:02cv369, 2006 WL 1698825, at *16 (S.D. Ohio June 20, 2006) (Report and Recommendation of Magistrate Judge Hogan).

-16-

legal material, and (2) the warden of that prison, by maintaining that policy, deprived him of meaningful access to the courts.[73]

It is well-settled that ignorance of a state rule is not sufficient cause to excuse noncompliance with such rule.[74] In that same vein, any alleged inadequacy of a prison law library is also insufficient to establish cause for excusing procedural default in a federal habeas matter.[75]

Moreover, the record establishes that Pough was represented by appointed counsel during at least a portion of the 180-day period subsequent to the filing of the transcripts in his direct appeal during which a timely post-conviction petition must be filed.[76] While it is clear that Pough's court-appointed lawyer during this period when a petition for post-conviction relief must be filed was not appointed nor empowered to represent him in

---

[73] ECF # 17 at 1-2.

[74] *Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004).

[75] *See*, *id.* Limited access to prison law library is insufficient to establish cause for procedural default.

[76] *See*, ECF # 39, Ex. 13 (March 21, 2001 letter from Lance Pough to Clerk of Ohio Appeals Court accepting the Court's March 9, 2001 offer, *id.*, Ex. 12, to appoint counsel for Pough in his direct appeal). *See also*, *id.*, Ex. 29 (December 19, 2001 letter of Michael Partlow, Esq. to Lance Pough transmitting copy of "Appellant's Brief and Assignments of Error which I prepared on your behalf."). Although the record provided here by the state does not include the appellate court docket sheet which would precisely indicate when the transcripts were filed on appeal, thus triggering the operation of the post-conviction 180-day time period, it appears that the transcripts were filed – and the time clock started – May 7, 2001. *See*, *id.*, Ex. 57 at 3-4 (State's response to defendant's post-conviction motion). It thus appears, although from this record it cannot be definitively established, that Pough was represented by court-appointed counsel from the filing of the transcript until the appellate brief was filed approximately 214 days later in December, 2001.

-17-

preparing such a petition,[77] there is no evidence that Pough took even the basic step of requesting a copy of Ohio's post-conviction relief statute from his Ohio lawyer, even though their correspondence makes reference to post-conviction proceedings.[78]

The untimeliness of Pough's post-conviction petition aside, he further procedurally defaulted by failing to properly present the claims asserted in that petition to the Supreme Court of Ohio.  To obtain habeas review in the federal cout, a petitioner must exhaust all remedies available in the state courts by giving the highest court in the state a full and fair opportunity to rule on all claims.[79]  Where no further state remedies exist on an unexhausted claim, such claim is subject to procedural default.[80]

As explained more fully below, Pough attempted to present the claims asserted in his post-conviction petition to the Supreme Court of Ohio.  He failed in that attempt because the clerk refused to file his appeal for procedural noncompliance.  He did not cure that noncompliance, and he now has no further recourse available in the Supreme Court.  This constitutes further procedural default on those claims.

Therefore, the Magistrate Judge recommends that the *Maupin* criteria for procedural default be found met with respect to these grounds for relief.  Moreover, the Magistrate Judge

---

[77] *See, id.*, Ex. 29 (December 19, 2001 letter of attorney Partlow to Pough noting that adding new items to the record or pursuing new discovery after trial, which Pough wanted done on appeal, is not possible except in post-conviction proceedings, but "I have not been appointed to represent you in such proceedings.").

[78] *Id.*  "In reviewing your letters ... you mentioned to me several times...."

[79] *Smith*, ___ F.3d ___, 2006 WL 2571395, at *2.

[80] *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

-18-

recommends finding that Pough has not established cause for his default, nor prejudice from failure to address any constitutional arguments in these grounds.[81] Consequently, the Magistrate Judge recommends that Pough's grounds for relief one, two, three, four, five and six be dismissed as procedurally defaulted.

b.    *Grounds for relief eight, nine and ten are procedurally defaulted.*

In these claims, Pough contends that he did not comply with Ohio's requirement of filing post-conviction petitions within 180 days of filing the transcript on appeal because the state did not provide him with copies of the Ohio statute containing that requirement (ground eight);[82] that he was denied the opportunity to supplement the appellate record with additional information because the state did not provide him with the Ohio case authority holding that items not part of the trial record may not be added at appeal (ground nine);[83] and that the Ohio Supreme Court rule requiring notarized affidavits of indigency was newly-established immediately prior to it being applied to him, and so should not be considered "firmly established and regularly followed" so as to support procedural default

---

[81] Pough has not sought to prove that correcting any purported constitutional error would, with reasonable probability, produce a different verdict. *See*, *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

[82] ECF # 16 ("Motion with Amended Constitutional Claims 14, 15, 13 and 16") at 23-25. Pough's handwritten amendment is not paginated. These page numbers were originally calculated by the state, ECF # 36 at 11, and corroborated to the degree possible by the Magistrate Judge. The pages noted here represent the location of the bulk of an asserted claim, as re-stated by the state for clarity. However, as previously noted, aspects of individual claims are imbedded within other claims and are interspersed throughout the entire document so that no clear demarcation between individual grounds can be established, nor can clear statements of the issues be easily found.

[83] ECF # 16 at 30-31. *See*, ECF # 36 at 11 (State's citation to determined pages).

(ground ten).[84]  Pough has also elaborated in a supplemental filing on his contention that his non-notarized indigency affidavit in the Ohio Supreme Court should not be barred since, according to Pough, the rule was allegedly only recently established.[85]

As explained above, grounds eight and nine first appeared in the appeal from the denial of Pough's post-conviction petition as arguments for excusing the untimeliness of that petition.  Ground ten first surfaced as purported cause for his failure to perfect his appeal to the Supreme Court of Ohio.  The analysis above rejecting the substance of grounds eight and nine as cause for excusing the procedural default on grounds one through six applies with equal force to Pough's argument that these grounds constitute an independent basis for federal habeas relief.  The Magistrate Judge recommends the dismissal of these grounds as procedurally defaulted.

In ground ten Pough argues that the Ohio Supreme Court rule requiring notarized affidavits of indigency should not be enforced because it is based on a court decision announced after Pough's conviction but before he appealed to the Court.[86]  First, the case cited by Pough as "creating" the rule requiring notarized affidavits in this circumstance, *Toledo Bar Association v. Neller*,[87] simply re-states Ohio's long-standing rule that an "affidavit" must be a sworn statement and not, as is permitted in the federal rules, an

---

[84] ECF # 16 at 36-37.

[85] ECF # 32.

[86] Pough consistently and incorrectly refers to this situation as being a "retroactive" application of the law.

[87] *Toledo Bar Assoc. v. Neller*, 102 Ohio St. 3d 1234, 809 N.E.2d 1152 (2004).

unsworn statement made under penalty of perjury.  As the Ohio Supreme Court stated in *Neller*:

> Our rejection today of Neller's filing, and our enforcement instead of a strict and traditional reading of the term "affidavit," is consistent with *this court's long-standing insistence that only a written declaration made under oath before a proper officer qualifies as an affidavit.*[88]

Second, Pough's claim that he could have known of the Ohio Supreme Court's requirement that an affidavit of indigency be notarized only by reviewing the *Neller* decision is unsupportable.  Pough learned in a letter dated January 22, 2003 from the attorney who prepared the appeal of the denial of his Appellate Rule 26(B) application to the Ohio Supreme Court that the affidavit of indigency required by the Ohio Supreme Court needed to be notarized:

> I have enclosed another copy of the affidavit of indigence with this letter.  Please be sure to have it filled out, have it notarized, and return it to me as soon as possible.  I cannot continue to represent you if there is a doubt about your status as an indigent appellant....[89]

The plain language of this letter, written more than a year and a half before the Ohio Supreme Court decision in *Neller*, emphasized that the affidavit of indigency must be notarized.  The attorney highlighted this requirement by underscoring it in the letter.  Pough, therefore, was on notice that the particular affidavit of indigency required by the Ohio Supreme Court needed to be notarized well before the *Neller* opinion and well before the

---

[88] *Id*., 102 Ohio St. 3d at 1237, 809 N.E.2d at 1154 (emphasis added).

[89] ECF # 39, Ex. 50 (Motion for reconsideration of denial of Rule 26(B) application). Letter from Erik M. Jones, Esq. to Lance Pough, January 22, 2003, filed as attachment to the motion (emphasis in original).

preparation of the affidavit at issue in ground ten. Pough's failure to comply with the rule in Ohio that "affidavit" means "only a written declaration made under oath before a proper officer"[90] is solely his own fault and not excused by any external factor. This argument fails on both cause to excuse procedural default and as an independent ground for habeas relief.

Consequently, the Magistrate Judge recommends that ground ten be dismissed as procedurally defaulted.

## C.    Ineffective assistance of counsel - ground seven

### 1.    *The arguments*

Pough claims ineffective assistance of his trial counsel because he failed to seek discovery of the state's case prior to negotiating the plea agreement. This allegedly left Pough without a basis for evaluating whether the state's case against him without his confession, was strong enough to convict. Moreover, Pough posits that his counsel failed to seek suppression of that confession and of the fruits of his cooperation when the terms of the plea agreement were, according to Pough, not honored by the state.[91] Pough asserts that these shortcomings of his counsel made an intelligent plea impossible and forced him to accept an unfavorable plea, rendering that plea involuntary.[92]

The state responds at the guilty plea hearing that the trial court carefully questioned Pough as to whether he understood the plea; whether specifically he understood that the plea

---

[90] *Neller*, 102 Ohio St. 3d at 1237 , 809 N.E.2d at 1154.

[91] *See*, ECF # 40 at 3-5.

[92] *Id.*

recommended that the state and federal sentences be served concurrently; whether he believed his attorney had represented him satisfactorily; and whether his signature on the plea agreement was given freely and voluntarily.[93] In addition, Pough himself acknowledged that, while there had been some dispute as to what a federal prosecutor may have said during plea negotiations in Pough's federal case, "I think they [the federal prosecutors] spoke on the State's behalf [during negotiations on the federal plea] and they shouldn't have spoken on the State's behalf, that's what happened."[94] In the end, Pough, in response to a direct question from the court as to whether he wished to proceed with his plea, stated, "Yeah, I want to go through with it."[95]

At the sentencing hearing, the trial court again gave Pough the chance to voice his concern that his cooperation was improperly induced by the federal prosecutor and repeatedly given the opportunity to withdraw his previously tendered guilty plea and go to

---

[93] *See*, ECF # 36 at 23-25. (Internal citations to the record omitted).

[94] ECF # 39 at 10.  Pough's contention that the federal prosecutor had promised him that he would receive a federal sentence of 15 years, 8 months, with a state sentence of exactly the same length, was examined by the Sixth Circuit on appeal from Pough's federal conviction and sentence on possessing crack cocaine with intent to distribute.  The Sixth Circuit rejected Pough's argument, finding that, notwithstanding terms that may have been discussed in pre-plea correspondence, the federal government had "made no such promise." *Pough*, 20 F. App'x at 347.

[95] *Id.*

trial.[96]  Ultimately, Pough decided to proceed with sentencing under the terms of the previously entered plea.

**2.     *The state court decision***

On appeal, Pough argued that his guilty plea was not knowing and voluntary because his trial counsel was ineffective for (1) failing to move to suppress evidence obtained as a result of Pough's allegedly improperly induced cooperation, and (2) not telling Pough that such an option existed.[97]  The state appeals court applied Ohio's standard[98] for evaluating claims of ineffective assistance of counsel, which adopts the clearly established federal law of *Strickland v. Washington*.[99]  It determined that Pough had not shown specifically what evidence could or should have been suppressed or that he actually would have gone to trial "but for" the error of not moving to suppress.[100]  Accordingly, Pough had not overcome the strong presumption that counsel had rendered effective assistance in negotiating for Pough's state and federal sentences to be served concurrently, not consecutively.[101]

---

[96] The state trial judge informed Pough eight times that he could withdraw his guilty plea.  *Id.* at 16, 17, 19, 21, 22 (3 times) and 23.  Pough responded five separate times that he understood he could withdraw his plea.  *Id.*  at 17, 18, 19, 20, 21.  Pough further specifically told the trial court on four occasions in response to direct questions that he did not wish to withdraw his plea.  *Id.* at 17, 19, 21, 22.

[97] ECF # 39, Ex. 20 at i (Appellant's brief).

[98] *State v. Bradley*, 42 Ohio St. 3d 136, 538 N.E.2d 373 (1989).

[99] *Strickland v. Washington*, 446 U.S. 668 (1984).

[100] *Pough*, 2002 WL 31813100, at *2.

[101] *Id.*

### 3.     *The clearly established federal law*

To establish ineffective assistance of counsel in a federal habeas proceeding, the two-prong test of *Strickland v. Washington*[102] must be met.  As the Sixth Circuit stated in *Bigelow v. Williams*,[103] this test is met as follows:

> To succeed on an ineffective assistance of counsel claim, a petitioner must show (1) that his lawyer's performance was deficient and (2) that the deficiency prejudiced the defense.  In establishing the first requirement, the petitioner must demonstrate that his lawyer's performance "fell below an objective standard of reasonableness" as measured by "prevailing professional norms."   Judicial review of the lawyer's performance must be "highly deferential," and "indulge a strong presumption" that the lawyer's conduct in discharging his duties "falls within the wide range of reasonable professional assistance," since reasonable lawyers may disagree on the appropriate strategy for defending a client.   While "strategic choices made after a thorough investigation of the law and facts ... are virtually unchallengeable[,][] strategic choices made after less than complete examination are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.   In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes a particular investigation unnecessary....
>
> In establishing prejudice, [a petitioner] must demonstrate a "reasonable probability" that the result of his trial would have been different but for [his attorney's] mistakes.  A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome," but something less than a showing that the outcome more likely than not would have been different. [104]

---

[102] *Strickland*, 466 U.S. at 687.

[103] *Bigelow v. Williams*, 367 F.3d 562 (6th Cir. 2004).

[104] *Id*. at 570 (internal citations omitted).

Moreover, both elements of *Strickland* must be met.  Courts are not required to conduct an analysis of both prongs if the entire claim is fatally flawed by a petitioner's failure to prove one element.[105]

Where, as here, the state appeals court decided the federal habeas claim under a state standard based on clearly established federal law, the federal habeas court may grant the writ only if the state decision was an "unreasonable application" of that clearly established federal law.[106]  A decision is an "unreasonable application" if it is "objectively unreasonable" and not simply erroneous or incorrect.[107]

### 4.      *The state appeals court reasonably applied Strickland to deny Pough's claim of ineffective assistance of counsel.*

The state appellate court here initally noted that Pough did not identify any specific evidence that his trial counsel should have sought to suppress.[108]  As the court then observed, without any basis for evaluating what specific evidence might not have been available to the state were it successfully suppressed, there is no basis for a reviewing court to determine how the outcome might have been different but for the attorney's decision not to seek suppression.[109]

---

[105] *Baze v. Parker*, 371 F.3d 310, 321 (6th Cir. 2004).

[106] *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000).

[107] *Id.* at 409-11.

[108] *Pough*, 2002 WL 31813100, at *2.

[109] *Id.*

Pough seeks in this habeas petition to make a similar rebuttal argument to that advanced to the state appeals court.  He essentially argues that "all the evidence assembled [by the state] was derived from the defendant's cooperation" and, thus, all the evidence bearing on his guilt in the possession of the state presumably should have been the subject of a suppression motion.[110]

However, the state court record cited to by Pough as proof that all the evidence to be used against him at trial was the fruit of his cooperation and, therefore, potentially subject to a successful motion to suppress does not so indicate.  In fact, the record actually appears to support the view that the state sought Pough's cooperation to make a case against all six other co-defendants in this homicide and not to develop specific evidence against him.[111]

---

[110] ECF # 40 at 5.  Pough in his traverse here cites to a comment by the state prosecutor at the sentencing hearing to the effect that the investigation by the state had "stalled" until the state "ha[d] to take the first person in the door [Pough] to make the case...." ECF # 39, Ex. 6 at 28.  However, it is by no means clear that the state prosecutor was indicating that the state had no credible evidence of guilt against Pough prior to his cooperation.  She is further quoted in these brief remarks as indicating that the difficulty the state had, which necessitated cooperation with the "first person in the door [Pough]," was making a case against six co-defendants.  The prosecutor specifically stated that the state, prior to Pough's cooperation, "was able to develop some evidence" but that "*in order to get all of the parties involved in this*, and there were many, at least six co-defendants involved in this homicide, there was – it was required that we make this deal with this defendant in order to facilitate *that*." *Id.* (Emphasis added). This strongly implies that Pough's cooperation was specifically for the purpose of obtaining evidence relating to the other co-defendants and not to his own guilt.

[111] *Id.  See also, id.* at 11, where the state detailed the evidence of Pough's guilt that they were prepared to offer at trial.  Although there is no way from this record to determine which of these evidentiary elements were developed prior to Pough's cooperation, excluding Pough's confession and that of another co-defendant, the state told the trial court it was prepared to present "phone records, polygraph testimony, as well as eye-witness testimony, ballistics testimony, BCI trace evidence testimony, ATF records, OMVI records and multiple lay witnesses in this matter."

Further, the state indicated at Pough's guilty plea hearing that it was prepared to offer numerous witnesses and physical evidence of Pough's guilt.[112]  As the state appeals court noted, Pough has made no attempt to show what among this evidence was potentially subject to suppression as the fruit of his allegedly improperly induced cooperation and whether the remainder was sufficient to convict him.  Pough's contention that all the evidence against him was subject to suppression is simply not supported in the record.

Furthermore, although not specifically discussed by the Ohio appellate court, there is another flaw in Pough's argument.  Pough premises his claim on a purported misrepresentation by federal prosecutors that he would receive identical sentences on the federal and state charges, to be served concurrently in federal prison.  He alleges that the federal prosecutors lied to him because he received a longer sentence on the state charges.  As noted, the Sixth Circuit examined this argument on an appeal from the federal sentence but rejected it.[113]  It concluded that the federal government had "made no such promise."[114]  Absent the misrepresentation, any motion to suppress in the state case would have failed.  Pough has pointed to nothing that would compel this Court to reject the Sixth Circuit's conclusion.  No prejudice exists, therefore, caused by counsel's failure to move to suppress or to investigate what evidence may have come from Pough's cooperation.

---

[112] *Id.*

[113] *Pough*, 20 F. App'x at 347.

[114] *Id.*

-28-

Accordingly, the Magistrate Judge recommends that the state appeals court be found to have not unreasonably applied *Strickland* in rejecting Pough's claim of ineffective assistance of counsel.  Ground seven of this petition should be denied as without merit.

## IV.  Conclusion

For the foregoing reasons, the Magistrate Judge recommends that Lance Pough's petition for a writ of habeas corpus be dismissed or denied as is more fully set forth in this report and recommendation.

Dated:  September 26, 2006                  s/ William H. Baughman, Jr.
                                            United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[115]

---

[115] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).